IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:12-cv-514 |
| | ) | |
| ELLEN MEREDITH STUBENHAUS | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR PERMANENT INJUNCTION

### Nature of Action

1.  This is a civil action brought by the United States of America under §§ 7402 and 7408 of

the Internal Revenue Code (26 U.S.C.) (I.R.C.) to enjoin Ellen Meredith Stubenhaus, and all

those in active concert or participation with her, from:  (a) organizing, promoting, or selling (or

helping others to organize, promote, or sell) the tax-fraud schemes described herein, and any

other tax shelter, plan, or arrangement that incites or assists customers to attempt to violate the

internal revenue laws or evade the assessment or collection of their federal tax liabilities or claim

improper tax refunds; (b) engaging in activity subject to penalty under 26 U.S.C. § 6700,

including making, in connection with the organization or sale of any plan or arrangement, any

statement about the securing of any tax benefit that the defendant knows or has reason to know is

false or fraudulent as to any material matter; and (c) engaging in conduct subject to penalty

under any provision of the Internal Revenue Code, or engaging in any other conduct that

substantially interferes with the proper administration and enforcement of the internal revenue

laws.

2.  This action has been requested by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General of the United States, under the provisions of I.R.C. §§ 7402 and 7408.

3.  Jurisdiction exists under 28 U.S.C. §§ 1340 and 1345, and I.R.C. §§ 7402(a) and 7408(a).

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and I.R.C. § 7408(a) because a substantial portion of the events giving rise to this action have occurred in this judicial district.

## Defendant

5.  Ellen Stubenhaus is or was a member of the Executive Council of Pinnacle Quest International (PQI).

6.  The United States previously brought a complaint for permanent injunction against Stubenhaus and 18 other defendants relating to conduct similar to that which is alleged in this complaint.  *See United States v. Pinnacle Quest Int'l, et al.*, Case No. 3:08-cv-00136-RV-EMT (N.D. Fla.) (Doc. 1.)  The Court entered permanent injunctions against all but two of the defendants in that action because, prior to judgment, the United States had voluntarily dismissed without prejudice its claims against Stubenhaus and Lee Williams.  *Id.* (Doc. 168,)  The United States dismissed its claims against Stubenhaus because she was being held in Costa Rica awaiting extradition to the United States and could not be served with the Complaint.

7.  After extradition, Stubenhaus faced conspiracy charges under 18 U.S.C. § 371.  *See United States v. Stubenhaus*, Case No. 3:12-cr-00014-MCR (N.D. Fla.) (Doc. 1.)  Stubenhaus admitted her involvement in PQI (Doc. 6), and reached a plea agreement with the United States on January 27, 2012.  (Doc. 7.)  The Court accepted the plea agreement on February 2, 2012

- 2 -

(Doc. 10), and on June 29, 2012, sentenced Stubenhaus to 60 months' imprisonment.  (Doc. 22).

The Court also ordered Stubenhaus to pay restitution in the amount of $387,324.00.  *Id.*

Judgment was entered on July 10, 2012 (Doc. 23), and Stubenhaus is presently incarcerated at

the Federal Correctional Institution – Medium in Coleman, Florida.

### PQI's History

8.  PQI is an unincorporated organization conducting business from several addresses within

this judicial district and division.  PQI holds itself out as a Panamanian International Business

Company, but is in reality a collection of individuals carrying on a fraudulent promotion for

profit.

9.  PQI is a successor organization to the Institute of Global Prosperity, which ceased

operations in 2002.  Global Prosperity's products falsely assured customers they could legally

stop paying federal income taxes without repercussion.  The sale of these products caused five

state attorneys general to issue cease and desist orders to Global Prosperity.  The founders of

Global Prosperity have been convicted of various tax crimes.

### PQI's Products

10.  PQI sells three products, named Q1, Q2, and Q3.  These products are promoted by a

team of approximately 830 PQI-authorized "Qualified Consultants," and PQI customers must

purchase these products from Qualified Consultants in a prescribed sequence.

11.  PQI is a multilevel marketing scheme.  Qualified Consultants are individually authorized

by PQI to sell one, two, or all three of PQI's products, depending on the Qualified Consultant's

previous sales record.  In order for a customer to become a Qualified Consultant for any of PQI's

three products, the customer must purchase the product and refer two sales of that product to the

Qualified Consultant from whom the customer purchased that product.

12.  Qualified Consultants pay PQI $99 per year to serve as Qualified Consultants, and in

return, they receive a portion of the purchase price of each PQI product they sell.

13.  PQI's multilevel marketing structure creates strong financial incentives for Qualified

Consultants to sell PQI products and to convince their customers to become Qualified

Consultants.

(a) PQI sells Q1 to customers for $1,350, of which the Qualified Consultant retains

$1,000.

(b) PQI sells Q2 to customers for $7,500, of which the Qualified Consultant retains

$6,000.

(c) PQI sells Q3 to customers for $18,500, of which the Qualified Consultant retains

$12,000.

14.  The first product, Q1, is a package of purported "educational" resources created by PQI,

including a lengthy "educational" course on CDs, access to an online resource center, and access

to PQI-vetted experts in various fields, including federal income taxes, financial planning, and

alternative medicine.  In order to access the online resource center or to consult with these

supposed experts, the customer must first purchase Q1.

15.  PQI's CD promotional course consists of recorded interviews of individuals purported to

have expertise in a particular subject matter.  The interviewed speakers make the following false

statements about the federal income tax laws:

- 4 -

(a) The Sixteenth Amendment to the United States Constitution was not properly ratified, and consequently, direct taxes by Congress upon individual citizens are unconstitutional;

(b) The Internal Revenue Code does not require United States citizens to pay federal taxes on income earned from wage labor;

(c) IRS employees do not have authority to assess taxes against individuals, and IRS agents are personally liable to taxpayers for taxes they collect from individuals;

(d) The IRS establishes federal income tax liabilities against United States citizens by fraudulently recording in internal IRS documents that the citizens reside in a United States territory or engages in excise-taxable activities such as drug trafficking; and

(e) The Internal Revenue Code does not apply to United States citizens who are not federal employees and who do not live within a federally administered territory or possession.

16.  Q2 is a multi-day conference available to customers who have already purchased Q1. PQI charges customers $7,500 to attend the Q2 conference, which does not include most meals, lodging, or airfare expenses.

17.  Customers who have attended a Q2 conference are eligible to attend a Q3 conference, which is a multi-day offshore conference at which similar PQI-vetted services and investments are presented and sold.  Customers pay $18,750 to attend the Q3 conference, which does not include the price of airfare to and from the conference.

18.  In 2007 PQI hosted a 400-person Q3 conference aboard the Celebrity Cruise Line ship Galaxy, promoting a smorgasbord of tax fraud at sea.  Ports of call during the May 14-21 Mediterranean cruise included Rome, Italy; Piraeus, Greece; Kusadasi, Turkey; Santorini, Greece; and Mykonos, Greece.  Sherry Peel Jackson spoke about her frivolous tax-avoidance

arguments at this Q3 conference just a few weeks after her April 13, 2007 federal indictment in the Northern District of Georgia for willful failure to file federal income tax returns.

## PQI Is Operated by its Executive Council

19.  The PQI Executive Council is composed of approximately 9 to 16 people who collectively operate PQI for profit.  PQI Qualified Consultants who have a sufficiently robust sales record are elected to the Executive Council by the existing Executive Council members.

20.  PQI, acting through its Executive Council, creates relationships with entities and individuals who desire to sell their products and services to PQI's customers.  PQI uses exclusive, mutually beneficial contracts with these vendors as a part of its strategy to sell more Q1, Q2, and Q3 products.

21.  As a condition of obtaining the PQI Executive Council's approval to market a vendor's products to PQI customers, PQI insists that vendors not deal with any PQI competitor.  Under the agreement, PQI's Executive Council decides what organizations are competitors.

22.  Through these exclusive-dealing arrangements, PQI makes its Q1 "educational" course a de facto component of all schemes and investments sold by PQI vendors, including the fraudulent tax-evasion schemes sold by certain PQI-approved vendors, described in detail below.

## PQI-Approved Vendors Promote Tax-Evasion Schemes

23.  PQI's Executive Council has approved numerous vendors to market their goods to PQI customers despite these vendors' promotion of tax schemes that are obviously fraudulent.  In fact, PQI vendors were a Who's Who of notorious tax defiers.

24.  Southern Oregon Resource Center Educational Service (SORCE), organized by Eugene Casternovia, is or was a PQI-approved vendor that sells a fraudulent tax scheme.

25.  IMF Decoder, formerly known as IRS Codebusters, is organized by Sharon Kukhahn, Daniel Shaw, and Robbie Struckman.  It is or was a PQI-approved vendor that sells a fraudulent tax scheme.

26.  Bill Benson is or was authorized by PQI to promote his fraudulent tax scheme called the Reliance Defense Package to PQI customers.

27.  PQI-approved vendor Sherry Peel Jackson sold materials that fraudulently purport to help customers avoid federal tax by showing that they are not required to pay federal income taxes.

28.  MYICIS was a PQI-approved vendor headquartered in Berryville, Arkansas.  MYICIS offered its customers access to a "warehouse bank" – a pooled bank account, opened in the name of MYICIS, at a legitimate bank.  Each MYICIS customer had a sub-account within the pooled account, and records of the funds in each sub-account were secretly maintained by the operators of MYICIS.  The existence of the sub-accounts and the identity of the sub-account holders was not disclosed to the bank where the pooled account was held.  This arrangement gave the false appearance to the depository bank (and to anyone who was not a MYICIS member, including the IRS) that MYICIS itself owned and controlled all the money in the pooled account.  But in fact, the client retained control over his funds in the pooled account, because each MYICIS client's money was available to him essentially on demand, through a variety of methods.  Stubenhaus was a MYICIS client.

**Stubenhaus's Involvement with PQI and its Vendors**

29. Stubenhaus, who had been a marketer in PQI's predecessor organization, Global, became a PQI member and marketer on or about May 12, 2002 by "grandfathering" in from

Global after Global's demise.

30.  After she joined PQI in May 2002, Stubenhaus did not file federal income tax returns nor pay federal income taxes.

31.  In or about October 2002, Stubenhaus joined PQI's Executive Council.

32.  Stubenhaus attended at least five PQI Q2 conferences as follows:  June 2003 in Cancun, Mexico; December 2003 in Cancun, Mexico; June 2004 in Cabo, Mexico; February 2005 in Cancun Mexico; and October 2005 in Ixtapa, Mexico.

33.  Stubenhaus attended three PQI Q3 conferences as follows:  September 2004 in Panama City, Panama; February 2006 in Malta; and May 2007 aboard a Mediterranean cruise ship.

34.  Stubenhaus was a Qualified Consultant for approximately 296 PQI clients.  Many of Stubenhaus' clients joined PQI to gain access to PQI's debt elimination vendors.

35.  Stubenhaus utilized the services of PQI vendors to hide her own PQI-related income from the IRS, by giving the false appearance that third-party entities owned and controlled the funds she earned, when in fact, Stubenhaus herself owned and controlled these funds.

36.  To that end, on or about January 3, 2005, Stubenhaus established a Panamanian nominee foundation, World Rhythm Foundation, and a Panamanian nominee corporation, Right of Way Inc., both using the services of SORCE.  Stubenhaus exercised complete control over the affairs of these two entities at all times.

37.  On or about August 24, 2004, Stubenhaus established an account with the MYICIS warehouse bank in the name of Right of Way Inc.  Stubenhaus controlled and beneficially owned the funds in Right of Way Inc.'s MYICIS account at all times.

38.  Stubenhaus made $607,873 of total deposits into her MYICIS account.  Of that amount, at least $226,261 constituted PQI-related earnings.

39.  From 2002 to 2008, Stubenhaus earned at least $512,099.32 in gross receipts from selling PQI memberships and vendor products.

40.  Stubenhaus assisted other co-conspirators in concealing the income of PQI by remitting the "wholesale" portion of Stubenhaus's PQI membership sales through MYICIS.  Specifically, from 2002 to 2008, Stubenhaus paid $158,004 from her MYICIS account to the various bank accounts of PQI.

41.  Stubenhaus mailed numerous form letters authored by IMF Decoder to the IRS to attempt to fabricate a "reliance defense" as a purported safeguard against prosecution for breaking the tax laws.  In particular, on or about April 4, 2002, Stubenhaus sent a letter prepared by IMF Decoder to the IRS, in which Stubenhaus claimed that the IRS was committing fraud against her by attempting to "fraudulently extract money" from her, and demanded that the IRS case any collections activities and criminal investigations against her.  These letters also falsely denied that Stubenhaus was a citizen of the United States.

42.  Stubenhaus was audited for numerous tax years.  On or about February 21, 2003, after receiving the results of an audit for 1998, Stubenhaus filed a Mail Fraud Report with the U.S. Postal Inspection Service which falsely claimed that Stubenhaus had received a fraudulent tax bill from the IRS.

43.  On or about July 21, 2005, Stubenhaus hosted a prospective PQI client at her residence. At the meeting, Stubenhaus explained the benefits of SORCE and IMF Decoder.  She also stated that PQI's client list, and PQI's records of how many sales PQI salesmen made, are kept in

Malaysia to prevent the IRS from obtaining them.  Stubenhaus also stated that PQI does not report sales commissions earned by its Qualified Consultants to the IRS.

44.  Stubenhaus, with the aid of MYICIS, transferred significant amounts of money offshore. Stubenhaus knew and understood that the effect of these transfers was to remove assets beyond the reach of the IRS.  Such transfers included, among others, the following:

(a) On or about February 16, 2006, Stubenhaus caused the operators to MYICIS to wire transfer $10,000 to a bank in Costa Rica.

(b) On or about March 22, 2006, Stubenhaus caused the operators of MYICIS to wire transfer $24,750 to a bank in Nassau, Bahamas, for investment with a brokerage firm.

(c) On or about April 4, 2006, Stubenhaus caused the operators of MYICIS to wire transfer $25,000 to a bank in Hong Kong.

### Knowledge of Illegal Conduct

45.  Stubenhaus has reason to know and knew that her conduct and her false statements about the tax laws help PQI vendors sell tax-fraud schemes.

46.  In May 2004, PQI founder and former PQI Executive Council member David Struckman was indicted for his role in the Institute of Global Prosperity, an organization that offered products similar to those offered by PQI.  Struckman was convicted in 2007 of conspiracy to defraud the government and tax evasion.

47.  In November 2004, the United States filed a complaint for permanent injunction against PQI-vetted vendor Bill Benson for selling a fraudulent tax scheme similar to other tax-fraud schemes that PQI vendors sell.  The court enjoined Benson in January, 2008.

48.  Sherry Jackson Peel, a presenter at many PQI-sponsored conferences, including the May, 2007 Q3 conference aboard the Celebrity Cruise Line ship Galaxy, was indicted and convicted in 2007 of willfully failing to file federal income tax returns.

49.  PQI is a continuation of Global Prosperity and offers for sale products very similar to those formerly offered for sale by Global Prosperity, which Stubenhaus knows and has reason to know are fraudulent.

50.  PQI helps vendors sell their products by assuring customers that PQI has thoroughly investigated the products that the vendor will offer.  But even a cursory review of the legal positions asserted by PQI's tax-scheme vendors would reveal the falsity of their claims.

### Harm to Government

51.  The schemes promoted by Defendant, PQI, and PQI's vendors harm the government by fraudulently helping customers evade federal taxes and helping customers hide assets and income from the IRS.

52.  The scope of the Defendant's and PQI's scheme is enormous:  from 2002 to 2006, PQI had gross sales of approximately $54 million.  Of this sum, PQI realized approximately $16 million in sales revenue from the sale of its various products and the approximately 830 Qualified Consultants collectively realized approximately $37 million in sales commissions.

53.  Approximately 11,500 customers have purchased Defendant's and PQI's tax-fraud schemes.  The fraudulent tax schemes of just two PQI-vetted vendors, IMF Decoder and SORCE, have deprived the United States of over millions of dollars in forgone federal income tax revenue.

54. The United States is further harmed because the IRS must dedicate its scarce resources to detecting and examining the inaccurate returns filed by PQI customers as a result of tax-fraud schemes that PQI promotes, and in attempting to assess and collect unpaid taxes.

55. Some of the revenue loss caused by Defendant's activities may never be recovered.

56. Defendant's extensive involvement in these numerous and elaborate schemes and their willingness to continue promoting these fraudulent schemes while former PQI members are enjoined, prosecuted, and convicted indicate that the misconduct described in this complaint or other similar misconduct is likely to recur unless Defendant is permanently enjoined.

### Count I: Injunction under I.R.C. § 7408 for violations of § 6700

57. The United States incorporates by reference the allegations contained in paragraphs 1 through 55.

58. I.R.C. § 7408 authorizes a district court to enjoin any person from, inter alia, engaging in conduct subject to penalty under I.R.C. § 6700 if the person has engaged in such conduct and injunctive relief is appropriate to prevent recurrence of the conduct.

59. Section 6700 imposes a penalty on any person who organizes or participates in the sale of a plan or arrangement and in so doing makes a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any tax benefit by participating in the plan or arrangement which that person knows or has reason to know is false or fraudulent as to any material matter.

60. PQI's plan or arrangement has three major components:

(a) PQI advertises its products and the products of its vendors through its website, its Qualified Consultants, its three-way call list, and its emails to customers;

(b) PQI requires that all customers purchase PQI's Q1 audio course before purchasing vendors' fraudulent tax schemes.  In so doing, PQI makes its Q1 a de facto component of each fraudulent tax scheme PQI's vendors sell, whether that sale occurs before, after, or during a Q2 or Q3 conference; and

(c) PQI provides a forum, in the form of Q2 and Q3 conferences, for vendors of tax-fraud schemes to sell their products.  PQI controls which vendors may appear at these conferences, and PQI agents falsely and fraudulently vouch for the quality of the vendors' products in order to help vendors sell the products.

61.  PQI furnishes or causes to be furnished false or fraudulent statements about the tax consequences of participation in its vendors' tax fraud schemes in the following ways:

(a) PQI sells Q1 which contains false statements about the federal income tax laws and contains false statements from vendors about the tax benefits of using their products;

(b) PQI publishes an online resource center that contains false and fraudulent statements about federal tax laws; and

(c) PQI provides a forum at which PQI-approved vendors may advertise their fraudulent tax schemes and furnish false statements to customers.  By allowing only vendors that PQI approves, PQI implicitly, and in some cases explicitly, vouches for the veracity of the vendors' false speech.

62. Defendant knows and has reason to know that these statements are false and fraudulent within the meaning of 26 U.S.C. § 6700.

63.  If not enjoined, Defendant will continue to organize and sell tax fraud schemes.

64.  Injunctive relief is appropriate to prevent recurrence of this conduct.

- 13 -

## Count II: Injunction Under I.R.C. § 7402

65.  The United States incorporates by reference the allegations contained in paragraphs 1 through 63.

66.  I.R.C. § 7402(a) authorizes a court to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws, even if the United States has other remedies available for enforcing those laws.

67.  Defendant's activities substantially interfere with the enforcement of the internal revenue laws by promoting tax-fraud schemes and noncompliance with federal income tax laws.

68.  Defendant's conduct results in irreparable harm to the United States for which the United States has no adequate remedy at law.

69.  Unless enjoined by this Court, Defendant is likely to continue to engage in illegal conduct.  The United States is entitled to injunctive relief under I.R.C. § 7402(a).

WHEREFORE, the United States of America, prays for the following relief:

A. That this Court, under 26 U.S.C. §§ 7402 and 7408, enter a permanent injunction prohibiting Defendant and her representatives, agents, servants, employees, and anyone in active concert or participation with her, from directly or indirectly by means of false, deceptive, or misleading commercial speech:

(1) Organizing, promoting, marketing, or selling (or assisting therein) any tax shelter, plan, or arrangement, including but not limited to those described in this complaint, or any other tax shelter, plan or arrangement that incites or assists customers to attempt to violate the internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities or unlawfully claim improper tax refunds;

(2) Engaging in activity subject to penalty under 26 U.S.C. § 6700, including making, in connection with the organization or sale of any plan or arrangement, any statement about the securing of any tax benefit that the Defendant knows or has reason to know is false or fraudulent as to any material matter; and

(3) Engaging in conduct subject to penalty under any provision of the Internal Revenue Code, or engaging in any other conduct that interferes with the proper administration and enforcement of the internal revenue laws.

B. That this Court allow the government full post-judgment discovery to monitor Defendant's compliance with the injunction; and

C.  That this Court grant the United States such other and further relief as the Court deems just and appropriate.


Dated: October 26, 2012

Respectfully submitted,

PAMELA C. MARSH
United States Attorney

/s/Harris Phillips_____
HARRIS J. PHILLIPS
Massachusetts BBO #: 675603
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238, Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 616-1906
Fax: (202) 514-6770
harris.j.phillips@usdoj.gov

Attorney for the United States